*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

MARK T. SCHOENHOFER, S.C. #15781
1631 E. 1ST STREET
WICHITA, KANSAS 67214
316-262-5400
FAX: 316-262-1787
EMAIL: MYDEFENSEFIRST@YAHOO.COM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-10043-01-EFM |
| | ) | |
| MICHAEL B. O'DONNELL, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION TO DISMISS FOR DUE PROCESS
## AND FEDERALISM INFRINGEMENTS, AND
## NOTIONS OF ABSTENTION

**COMES NOW** the Defendant, Michael O'Donnell, by and through his attorney Mark T.

Schoenhofer, and moves this Court to dismiss the present indictment for encroaching on due

process rights and principles of federalism, and based on the doctrine of abstention. The

Defendant also prays for an evidentiary hearing on the motion, where he intends to provide

witness testimony.  In support of his motion, the Defendant offers the following background,

arguments and authorities:

### A. Background:

1) Michael O'Donnell is charged with five counts of wire fraud, in contravention of 18

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

U.S.C. §1343.[1]  It is alleged that Mr. O'Donnell, who allegedly "devised and intend[ed] to devise a scheme or artifice to defraud the State of Kansas, County of Sedgwick, Kansas and citizens thereof, in order to obtain money and funds by means of materially false or fraudulent pretenses, and representations, and in order to execute the scheme and artifice, did knowingly and wilfully transmit and cause to be transmitted by means of wire communications in interstate commerce, a writing, sign, and signal, which communicated the following information"

| Count | Date/Approx. Time | Email or Fax | Content |
|-------|-------------------|--------------|---------|
| 1 | 01/07/2016 | Email | 2015 Initial KGEC Report (State Senate) |
| 2 | 01/03/2017 at 2:43 P.M. | Email | 2015 Initial Report KGEC Report (State Senate) |
| 3 | 02/13/2017 at 12:42 p.m. | Email | 2015 Initial Report KGEC Report (State Senate) |
| 4 | 12/08/2016 | Email | July 22, 2016 - October 27, 2016 Amended KGEC Report (County Commission) |
| 5 | 01/03/2017 at 2:43 p.m. | Email | October 28, 2016 - December 31, 2016 Initial KGEC Report (County Commission) |

---

[1](ECF Doc. 1, at 5-6.)

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

2) Mr. O'Donnell is also charged with five counts of bank fraud in contravention of 18

U.S.C. § 1344(2).[2]  It is alleged that Mr. O'Donnell "having devised the aforesaid scheme or

artifice to defraud the District of Kansas and elsewhere, on or about (counts 6 and 7: **January 2,**

**2016 through January 5, 2016**)(Count 8: **January 30, 2015 through September 1, 2016**)

(Count 9: **November 7, 2016 through January 24, 2017**)(Count 10: **December 15, 2015**

**through May 5, 2016**), the Defendant, Michael B. O'Donnell, II for the purpose of executing the

aforesaid scheme to defraud, and attempting to do so, knowingly obtained moneys, funds, credits,

assets, securities, or other property owned by or under the custody or control of (Counts 6, 7, 8,

10: **Sunflower Bank**)(Count 9:**Vintage Bank**), a financial institution insured by the Federal

Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations or

promises: to wit; withdrawing (monies) by check written (to another individual), from the

financial institution for a purpose other than campaign-related expense."

3) Mr. O'Donnell is also charged with two counts of money laundering in contravention

of 18 U.S.C. § 1956[3].  It is alleged there that Mr. O'Donnell between the dates of January 2, 2016

and January 5, 2016 knowingly and wilfully engage[d] in monetary transaction by and through

financial institutions, affecting interstate commerce, that is, Defendant Michael O'Donnell

caused money to be deposited into his personal checking account at Intrust Bank, knowing that

the property involved in the financial transactions represented the proceeds derived from

---

[2](ECF Doc. 1, at 6-9.)

[3](ECF Doc. 1, at 10.)

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

specified unlawful activity, that is, Bank Fraud, in violation of 18 U.S.C. §1844(2), and Wire

Fraud, in violation of 18 U.S.C. §1843.  The Defendant, Michael O'Donnell, conducted these

transaction, knowing that they were designed in whole or in part, to conceal and disguise the

nature, location, source, and ownership of the proceeds of said specified unlawful activity:

| Count | Date Range | Amount | Transaction |
|---|---|---|---|
| 11 | 01/02/2016 - 01/05/2016 | $1,000 | Cash Deposit to Intrust Bank Checking Account |
| 12 | 01/05/2016 - 01/05/2016 | $1,000 | Cash Deposit to Intrust Bank Checking Account |

**B. Arguments and Authorities.**

4)  This indictment breaks precedent of federal deference to state enforcement of

campaign finance misconduct of candidates for state or local political office. Kansas, like other

states, has a longstanding and robust regulatory campaign finance environment for candidates for

state and local political office. The Kansas Campaign Finance Act establishes civil fines and

criminal penalties for misuse of state and local campaign funds. County prosecutors, in

conjunction with the Kansas Governmental Ethics Commission, routinely resolve campaign

finance violations of state and local candidates at the state level through criminal prosecution,

civil fines, and administrative sanctions. The alleged acts in this indictment would constitute

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

Class A misdemeanors under the Kansas Campaign Finance Act and, if committed by a federal

candidate, misdemeanors under the Federal Election Campaign Act. The wire fraud, bank fraud,

and money laundering charges alleged in the present indictment are inappropriate and extreme

given the more specific crimes available to state prosecutors under the Kansas Campaign Finance

Act; and, the charges amount to a "sweeping expansion of federal criminal jurisdictions" absent

"a clear statement by Congress" that such an expansion was ever intended.. *See generally*

*Cleveland v. U.S. ,* 531 U.S. 12, 24 (2000).

 5)  Kansas campaign finance laws specifically target and regulate the activity alleged in

the present indictment. Like other states, Kansas has a longstanding and robust campaign finance

regulatory and enforcement system. The Kansas Campaign Finance Act is overseen

administratively by the Kansas Governmental Ethics Commission, the state governmental agency

responsible under the act for monitoring campaign finance reports and investigating potential

violations of campaign finance laws by state and local candidates.[4] Campaign finance violations

may ultimately be remedied under the act by informal resolution with candidates, the imposition

of civil fines (up to $5,000 for first time violation, or more for subsequent violations), consent

decrees, or administrative orders.[5] A candidate's failure to pay an imposed civil fine renders the

---

[4] *See* K.S.A. 25-4119a et seq. (establishing Kansas Governmental Ethics Commission); K.S.A. 25-4142 et seq. (Kansas Campaign Finance Act).

[5] K.S.A. 25-4181. "The commission, in addition to any other penalty prescribed under the campaign finance act, may assess a civil fine, after proper notice and an opportunity to be heard, against any person for a violation of the campaign finance act in an amount not to exceed $5,000 for the first violation, $10,000 for the second violation and $15,000 for the third violation and for each subsequent violation." *Id.*

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

candidate ineligible to run for state or local office until the fine has been paid.[6] Violations of

certain provisions under the act are also referred to the attorney general or local district or county

attorney for misdemeanor prosecution.[7] There are no felonies prescribed under Kansas campaign

finance laws, although certain acts may constitute additional crimes under the Kansas criminal

code (e.g. theft, forgery, etc.).

6)  Had the conduct alleged in the present indictment been reported to the Kansas

Governmental Ethics Commission in the ordinary course of such state regulation, the alleged acts

would likely have implicated two provisions of the Kansas Campaign Finance Act: 1) prohibition

on personal use of campaign funds;[8] and 2) fraudulent campaign finance reporting.[9] Both

violations of the campaign finance act would constitute a Class A misdemeanor, punishable by

up to one (1) year in the county jail and a $2,500 fine (in addition to any civil fines assessed

pursuant to administrative action).

---

[6]*Id.* at 25-4181(b).

[7]*See* K.S.A. 25-4165 (requiring referral of campaign finance violation findings "to the attorney general and to the county or district attorney of the appropriate county"). The Kansas Campaign Finance Act establishes several Class A misdemeanors for certain violations of the act, including K.S.A. 25-4157a (personal or illegitimate use of campaign funds); K.S.A. 25-4144 (appointment of campaign treasurer); K.S.A. 25-4145 (PAC appointment of treasurer, registration requirements); K.S.A. 25-4146 (no contributions or expenditures unless campaign treasurer appointed); K.S.A. 25-4147 (no commingling of personal and campaign funds, records requirements of campaign funds, duties of treasurer); K.S.A. 25-4151 (campaign finance reporting requirements, late filing); K.S.A. 25-4154 (fraudulent contributions, contributions in another name); K.S.A. 25-4165 (confidentiality of commission records).

[8]*See* K.S.A. 25-4157a (prohibiting personal use of contributions).

[9]*See* K.S.A. 4168 (prohibiting fraudulent campaign finance reporting).

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

      7) Treatment of Mr. O'Donnell's alleged violations by the government stands in stark

contrast to the treatment of candidates in other notable Kansas campaign finance violation cases.

<u>Patricia Kilpatrick</u>

In 2006, the Kansas Governmental Ethics Commission found that state
representative Patricia Kilpatrick had "mingl[ed] campaign funds with personal
funds, convert[ed] campaign funds to personal use, fail[ed] to report
contributions, and fail[ed] to keep detailed campaign finance records."[10] She
received a $45,000 civil fine from the Kansas Governmental Ethics Commission
and her matter was referred to the Shawnee County District Attorney, who
declined to pursue criminal charges.

<u>Chris Steineger</u>

In 2010, the Kansas Governmental Ethics Commission fined state Senator Chris
Steineger for violating state campaign finance laws.[11] The Commission found that
between March and November 2009, Steineger improperly spent state senate
campaign funds to conduct polling on a potential run for secretary of state or
governor. Steineger was fined $5,000 but was <u>not</u> prosecuted criminally.

<u>Elliot Lahn</u>

In 2016, the Kansas Governmental Ethics Commission imposed a $7,500 fine
against Elliot Lahn, a candidate for state representative, for intentionally and
falsely reporting campaign contributions and expenditures on his candidate
campaign finance report filed with the Commission.[12] His case was referred to the
Johnson County District Attorney, but no criminal prosecution occurred.

      8)  Federal prosecution of state campaign finance violations is inappropriate. The present

---

[10]Associated Press, *Ethics commission accuses legislator of misusing funds*, Lawrence
Journal-World (Nov. 17 2006).

[11]Tim Carpenter, *Democratic chairman says Steineger under KBI scrutiny*, Topeka Capital-
Journal (Oct. 17, 2012).

[12]*See In the Matter of Todd Pattison vs. Elliot Lahn*, Complaint No. 578, Commission Report
and Order, Kansas Governmental Ethics Commission (Feb. 24, 2016).

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

indictment sets a dangerous precedent for federal prosecutors in Kansas to begin prosecuting routine state and local political office campaign finance violations that do not involve truly federal issues or materially significant interstate activity.[13] Federal prosecution of routine state campaign finance law violations strains principles of federalism and traditional federal deference to state regulatory systems by subjecting ordinary state campaign finance violations to the scrutiny of federal prosecutors. As one scholar has noted, "[federal] criminal liability for breach of [state campaign finance laws] has the potential to cast a long shadow over political and electoral activities."[14]

9) In the recent *United States v. McDonnell*[15] decision, the Supreme Court unanimously overturned Virginia Governor Robert McDonnell's bribery conviction because of the federal government's over-expansive interpretation of the term "official act" in charging him with and convicting him of bribery codified at 18 U.S.C.S. § 201(a)(3). *Id.* The Court expressed concern that this overbroad interpretation would lead to sweeping federal prosecutorial power, and it

---

[13]It would be naive not to recognize that everyone's bank account is federally insured. Likewise, it would be naive not to recognize that everyone with an Email account sends electronic mail through a vast highway of internet connections, traveling interstate and even world wide.  This kind of tenuous connection to interstate activity and/or federal law arguably makes every campaign finance violation the subject for federal prosecution.  In other words, the reach of federal government in a campaign finance violation involving either the internet or a bank account  virtually obliterates the need for state finance laws altogether.  Replacing state campaign finance laws with the Wire Fraud, Bank Fraud, and/or Money Laundering statutes was hardly the intent of Congress when enacting these federal statutes.

[14]See Sara Sun Beale*, Comparing the Scope of the Federal Government's Authority to Prosecute Federal Corruption and State and Local Corruption*, 51 Hastings L.J. 699 (2000).

[15]136 S. Ct. 2355 (2016).

8

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

could not "assum[e] that the government will use [that power] responsibly." *Id.* at 2373. In

overturning Governor McDonnell's conviction, the Court remarked,

> "Under the 'standardless sweep' of the Government's reading, [Citation omitted], public officials could be subject to prosecution, without fair notice, for the most prosaic interactions. 'Invoking so shapeless a provision to condemn someone to prison' for up to 15 years raises the serious concern that the provision 'does not comport with the Constitution's guarantee of due process.' [Citation omitted.]. Our more constrained interpretation of § 201(a)(3) avoids this 'vagueness shoal.' [Citation omitted.]"

*Id*.

In addition to a breach of due process, the Supreme Court also noted that the government's

position offended the principle of federalism:

> A State defines itself as a sovereign through 'the structure of its government, and the character of those who exercise government authority.' [Citation omitted.] That includes the prerogative to regulate the permissible scope of interactions between state officials and their constituents. Here, where a more limited interpretation of 'official act' is supported by both text and precedent, we decline to 'construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards'" of 'good government for local and state officials.' *McNally v. United States,* 483 U.S. 350, 360, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); see also *United States v. Enmons,* 410 U.S. 396, 410–411, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973) (rejecting a 'broad concept of extortion' that would lead to 'an unprecedented incursion into the criminal jurisdiction of the States').

*Id.* at 2373. The Court also noted that with such a sweeping read of the statute, both public

officials and the general public might be reticent to participate in the democratic process for

fear of federal prosecution.[16] *Id.* at 2372.  The *McDonnell* Court took account of an earlier

---

[16]"Officials might wonder whether they could respond to even the most commonplace requests for assistance, and citizens with legitimate concerns might shrink from participating in democratic discourse.  This concern is substantial. White House counsel who worked in every

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

decision, where it ruled against an over expansion of federal involvement: "The Court in

*Sun–Diamond* declined to rely on 'the Government's discretion' to protect against overzealous

prosecutions under § 201, concluding instead that 'a statute in this field that can linguistically

be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter.'"

*Id*. This same rationale is applicable to the government's action in the present case. Reading

into the Wire Fraud, Bank Fraud and Money Laundering statutes behavior commonly regulated

by state campaign finance law has the effect of linguistically interpreting those statutes with a

meat axe. Moreover, application of such broad and heavy-handed federal statutes to otherwise

robustly regulated state and local campaign finance activity will have the effect of deterring

Kansas candidates from the democratic process for fear of federal prosecution.

10) Prosecution of Mr. O'Donnell's alleged misconduct in federal court strains the

doctrine of abstention. When a federal court has the power to decide a dispute that would be

better decided by a state court (over state law matters), the federal court abstains from

exercising its power out of respect for the state court *See e.g., R.R. Comm'n of Tex. V. Pullman*

*Co.*, 312 U.S. 496, 501 (1941) ("These cases reflect a doctrine of abstention appropriate to our

federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority

because of 'scrupulous regard for the rightful independence of the state governments' and for

the smooth working of the federal judiciary.") Abstention is central to maintaining our nation's

---

administration from that of President Reagan to President Obama warn that the Government's
'breathtaking expansion of public-corruption law would likely chill federal officials' interactions
with the people they serve and thus damage their ability effectively to perform their duties.'" *Id*.,
at 2732.

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

balance of power.  It reflects "a proper respect for state functions, a recognition of the fact that

the entire country is made up of a Union of separate state governments, and a continuance of

the belief that the National Government will fare best if the States and their institutions are left

free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37,

44 (1971).

> Where timely and adequate state-court review is available, a federal court sitting
> in equity must decline to interfere with the proceedings or orders of state
> administrative agencies: (1) when there are "difficult questions of state law
> bearing on policy problems of substantial public import whose importance
> transcends the result in the case then at bar"; or (2) where the "exercise of federal
> review of the question in a case and in similar cases would be disruptive of state
> efforts to establish a coherent policy with respect to a matter of substantial public
> concern."

 *New Orleans Public Service, Incorporated v. Council of City of New Orleans*, 491 U.S. 350, 360
(1989 (quoting *Burford v. Sun Oil Co.*, 319 U.S. at 327).

11) The indictment inappropriately alleges extreme criminal conduct.  The same conduct

under FECA would be a federal misdemeanor or subject to a civil fine.  The indictment alleges

that Mr. O'Donnell (the candidate) 1) converted up to $10,400 to either his personal use or the

use of his friends, and 2) failed to disclose the nature of these expenditures in his state-level

campaign finance reports. This alleged activity, if conducted by a candidate for federal office,

would constitute a violation of the Federal Election Campaign Act (FECA) that both: 1) prohibits

a contribution or donation to a candidate committee from being converted by any person to

personal use;[17] and 2) requires accurate reporting of contributions and expenditures of federal

---

[17]*See* 52 U.S.C. § 30114(b).

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

candidate campaign funds.[18] Violations of FECA's personal use prohibition is a <u>federal</u>

<u>misdemeanor</u>, punishable by no more than one-year imprisonment, if the aggregate amount of the

conversion is less than $25,000.[19] The Federal Election Commission may also, and routinely

does, resolve campaign finance violations via administrative action or civil fine.[20] In contrast,

mail and wire fraud statutes charging *high-level felonies* have been used by some federal

prosecutors to avoid a more specific misdemeanor prosecution under FECA when the amounts

involved are less than $25,000 or for persons not covered by FECA.[21]

12) This discrepancy between federal enforcement of FECA violations and federal wire

fraud prosecutions of state campaign activity not covered by FECA has been noted by one

scholar as particularly troublesome:

Finally, federal prosecutors have brought a number of mail and wire fraud

---

[18]*See* 52 U.S.C. §§ 30103, 30104.

[19]*See* 52 U.S.C. § 30109(d)(1)(A)(ii).

[20]*See* 52 U.S.C. § 30109(a)(5) & (a)(6); *see also* Federal Prosecution of Election Offenses, 150 (8th ed. Dec. 2017), *available at* https://www.justice.gov/criminal/file/1029066/download. "The FEC pursues FECA violations under the statutory scheme set forth in Section 30109(a). In brief, civil penalties can be imposed through a 'conciliation' process, which is roughly equivalent to an administrative guilty plea with a stipulated penalty agreed upon by the FEC and the respondent; civil penalties can also be imposed through a civil suit brought by the FEC in federal district court. Civil sanctions range from 'cease and desist' agreements (in which the respondent agrees not to commit a similar violation in the future) to relatively substantial fines. The size of the civil fine depends both on the amount involved in the violation and the degree of knowledge and intent of the respondent." *Id.*

[21]*See FN 19.* "[F]or embezzlements from candidate committees involving amounts under $25,000, the mail and wire fraud statutes continue to be useful alternatives." *Id.* (emphasis added).

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

prosecutions based, at least in part, upon allegations of a wide range of other misconduct on the part of state and local officials. In effect, federal prosecutors have sought to use honest services prosecutions to reach conduct that would, if committed by a federal officer, run afoul of federal ethics rules and regulations, and statutes enforced only by civil sanctions and employee discipline. <u>Unless this expansion is checked, it has the potential to subject state and local officials to federal criminal liability when their federal counterparts would be subject only to civil sanctions, discipline, or removal. It also has the potential to subject federal officials to criminal sanctions for this conduct, despite the fact that Congress did not deem criminal penalties necessary.</u>[22] (Emphasis added.)

13) The indictment here is premised on the regulatory framework of the state campaign finance laws. Campaign finance reporting requirements and the prohibition on the personal use of campaign funds by candidates for state or local office are found solely in state statute.[23] There is no campaign finance law counterpart applicable to state and local candidates in federal statute. Federal campaign finance laws which apply to federal candidates do not regulate the use of campaign funds of state or local candidates for office in Kansas.[24] As a result, the allegations of wire fraud in the present Indictment are premised on the fact that the Kansas statutes require disclosure of the nature of specific contributions and expenditures of a state candidate campaign. Inexplicably, however, federal prosecutors did not inform or refer the matter to the Kansas Governmental Ethics Commission for enforcement under the same act that regulates use and

---

[22]See Beale, *supra*, at 699.

[23]*See* Indictment at ¶ 7, 14, USA v. Michael B. O'Donnell II, Case No. 18-10043-01-EFM (D. Kan. 2018) (alleging misrepresentations on submitted state campaign finance report).

[24]*Compare* Federal Election Campaign Act, 52 U.S.C. § 30101 et seq. (federal campaign finance laws applying to candidates for federal office) *with* K.S.A. 25-4142 et seq. (Kansas campaign laws applying to candidates for *state* and *local* office)

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

reporting of campaign contributions. Federal prosecutors have used state regulation framework to

manufacture a federal crime.

14) Kansas campaign finance laws are not alone in establishing a regulatory environment

for certain public or professional actions that have no regulatory or statutory counterpart in

federal law. In the same way that *federal* campaign finance laws exclusively regulate candidates

for *federal* office while *state* campaign laws exclusively regulate candidates for *state* office, most

professional licensing schemes regulated under state law have no federal counterpart. Examples

of such "state-only" regulation include the professional licensure and regulation system for

accountants,[25] nurses,[26] and state law enforcement.[27] Cross-over of federal prosecution for *state*

regulatory compliance delinquencies via wire fraud theories are extremely rare, given the

traditional deference federal courts and prosecutors have shown to states police power. To

federally indict the filing of false or inaccurate campaign finance report with the Kansas

Governmental Ethics Commission is the equivalent of federally indicting a Kansas registered

nurse for failing to disclose a misdemeanor conviction on their annual registration renewal

emailed to the Kansas Board of Nursing.[28]

---

[25]K.S.A. 1-201 et seq. (Kansas laws regulating licensure and conduct of accountants)

[26]K.S.A. 74-1106 et seq. (Kansas Nurse Practice Act).

[27]K.S.A. 74-5601 et seq. (Kansas Law Enforcement Training Act).

[28]The Kansas Nurse Practice Act requires that "[e]ach [nursing] licensee shall notify the board in writing of . . . (B) a conviction of any felony or misdemeanor, that is specified in rules and regulations adopted by the board, within 30 days from the date the conviction becomes final." K.S.A. 65-1117(c)(1)(B). The Act establishes that a violation of this requirement is a Class B

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

15) Federal courts have been suspicious of federal encroachment into state campaign
finance regulation. The U.S. Supreme Court has frowned upon federal prosecutorial attempts to
upset the "federal-state balance" in criminal law jurisdictional issues via a broad reading of the
federal fraud statutes.[29] In *Cleveland v. U.S.,* supra, a federal prosecution involving state
gambling registration laws, a unanimous U.S. Supreme Court held that the government's broad
reading of the mail fraud statute to accomplish federal jurisdiction "would [inappropriately]
subject to federal mail fraud prosecution a wide range of conduct traditionally regulated by state
and local authorities."[30]  At least two federal circuit courts have applied the rationale of
*Cleveland* when dismissing federal indictments for state campaign finance activities based on
narrow readings of federal fraud statutes. In *U.S. v. Turner*, 459 F.3d 775, 784-90 (6th Cir. 2006),
the U.S. Court of Appeals for the Sixth Circuit applied *Cleveland* when holding that the broadly
worded federal mail fraud statute did not "proscribe the use of the mails in furtherance of *state*
election fraud."[31] In *U.S. v. Ratcliff*, 488 F.3d 639, 648-49 (5th Cir. 2007), the U.S. Court of
Appeals for the Fifth Circuit relied on the rationale of *Cleveland* when dismissing a federal mail
fraud indictment against a local candidate for parish president because the candidate's

---

misdemeanor for a first-time violation, and a Class A misdemeanor for a second or subsequent
violation. *See* K.S.A. 65-1122(f).

[29]*See* Cleveland v. U.S., 531 U.S. 12, 24-25 ("Unless Congress conveys its purpose clearly, it
will not be deemed to have significantly changed the federal-state balance in the prosecution of
crimes.").

[30]*See id.*

[31]*See* U.S. v. Turner, 459 F.3d 775, 784-90 (6th Cir. 2006) (emphasis added).

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

misrepresentations on state campaign finance disclosures, while subject to state campaign

finance laws, did not constitute federal mail fraud.[32]

16) Case law among the federal circuit courts is mixed as to whether federal indictments

for certain types of state campaign finance related activity are lawful.[33] However, treatment of

such cases by federal courts have emphasized the <u>tension</u> created when federal prosecutors usurp

the traditional role state prosecutors and administrative agencies have played in policing state

campaign finance activity. In *Ratcliff*, the Fifth Circuit Court of Appeals noted the following

when dismissing a federal fraud indictment involving state campaign finance violations:

> Louisiana law establishes a comprehensive regulatory system governing campaign
> contributions and finance disclosures for state and local elections, with state civil
> and criminal penalties in place for making misrepresentations on campaign
> finance disclosure reports. [citations omitted]. And like the Court in *Cleveland*,
> "[w]e resist the Government's reading of [the federal mail fraud statute] . . .
> because it invites us to approve a sweeping expansion of federal criminal
> jurisdiction in the absence of a clear statement by Congress."[34]

17) Mr. O'Donnell's case is clearly distinguishable from previous federal cases in Kansas

involving state campaign finance violations.  In 2014, Kansas federal prosecutors indicted and

later convicted former state legislator Trent LeDoux on charges of bank fraud and money

laundering based in part on allegations that LeDoux improperly used bank loan funds to make

---

[32]U.S. v. Ratcliff, 488 F.3d 636, 648-49 (2007).

[33]*Compare* U.S. v. Henningsen, 387 F.3d 585 (2004) (holding that facts established federal
conviction for mail fraud where candidate for re-election as city alderman defendant diverted
$31,395 in campaign donations for private use through various methods) *with* U.S. v. Ratcliff,
488 F.3d 636, 648-49 (2007).

[34]*Ratcliff*, 488 F.3d at 648-49 (citing Cleveland v. U.S., 531 U.S. 12, 24-25).

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

contributions to his state legislator campaign account.[35] In contrast to the present indictment, the

LeDoux case involved misrepresentations made by LeDoux to a federally-insured bank while

applying for a bank loans of over $465,000.[36] LeDoux in turn used the bank loan proceeds to pay

off personal loans and funnel $27,000 into his state legislator campaign account.[37] While the

present indictment alleges that Mr. O'Donnell merely wrote checks from his account (over which

he had authority as a candidate) that were not campaign related, LeDoux committed bank fraud

by communicating misrepresentations to bank personnel in the process seeking access to

hundreds of thousands of dollars' worth of bank loan funds.

**WHEREFORE**, the Defendant prays that this Court will dismiss the present indictment

based on the above arguments and authorities. The U.S. government has needlessly interjected

itself in matters traditionally reserved for state authorities, offending notions of due process and

federalism and setting a dangerous precedent for federal prosecutors.  This type of over zealous

prosecution sometimes occurs when prosecutors throw a wide net on a large ring of perceived

criminal corruption. *See U.S. v. Archer*, 486 F.2d 670 (1973).   Michael O'Donnell came to law

enforcement attention in its investigation of other higher profile persons of interest suspected of

violating other federal crimes.  From the extensive investigation, law enforcement officials

---

[35] U.S. v. Trent LeDoux, 14-CR-40017-DDC-1 (ECF Doc. 1.).  *See* also, Tim Carpenter, *Ex-Rep. Trent LeDoux accused of bank fraud, money laundering*, Topeka Capital-Journal (Mar. 12, 2014).

[36] *See id.*

[37] *Id.*

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Motion to Dismiss

uncovered only these alleged campaign finance violations.  The government then charged the

alleged behavior instead of referring it to the Kansas Governmental Ethics Commission.  The

alleged criminal behavior is a matter of state concern.  The indictment must be dismissed because

of "scrupulous regard for the rightful independence of the state governments and for the smooth

working of the federal judiciary."  *R.R. Comm'n of Tex. V. Pullman Co.*, 312 U.S. 496, 501

(1941).

> Respectfully submitted,
>
>
> /S Mark T. Schoenhofer, Attorney
> Mark T. Schoenhofer, #15781
> 1631 E. 1st Street
> Wichita, Kansas 67214
> 316-262-5400
> Fax: 316-262-1787
> Email: mydefensefirst@yahoo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he electronically filed the foregoing entry of appearance with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

> /S Mark T. Schoenhofer, Attorney
> Mark T. Schoenhofer, #15781

18