*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Reply Brief

MARK T. SCHOENHOFER, S.C. #15781
1631 E. 1ST STREET
WICHITA, KANSAS 67214
316-262-5400
FAX: 316-262-1787
EMAIL: MYDEFENSEFIRST@YAHOO.COM

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
|                  Plaintiff,       ) | |
|                                   ) | |
| v.                                ) | Case No. 18-10043-01-EFM |
|                                   ) | |
| MICHAEL B. O'DONNELL,             ) | |
|                  Defendant.       ) | |
| _____ ) | |

### MICHAEL O'DONNELL'S REPLY BRIEF

**COMES NOW** the Defendant, Michael O'Donnell, by and through his attorney Mark T. Schoenhofer, and offers this brief in reply of the Government's response to his motion to dismiss.

_____

**THE GOVERNMENT'S EFFORTS IN DISTINGUISHING CASES CITED BY DEFENDANT IN HIS MOTION TO DISMISS FROM THE FACTS AT HAND IS MERELY AN ATTEMPT TO REDIRECT THE COURT'S FOCUS FROM THE OBVIOUS PROSECUTORIAL OVERREACH AT THE HEART OF THIS CASE.**

A. Federalism.

1

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Reply Brief

> The divisions between federal and state authorities often are not observed in prosecutorial decisions. Federal officials intrude on areas of state competence, and state authorities bring charges that effectively turn an individual state prosecutor into the national decision-maker on issues of regulatory importance. This results in duplication of effort on the part of government agents (prosecutorial and regulatory) and extra burden on those targeted for prosecution (or for analogous civil penalties). More concerning, it also brings opportunities for gamesmanship that advances prosecutorial interests at the expense of clear, cogent legal rules. All of these aspects of the misuse of prosecutorial power threaten the proper functioning of our constitutional system and undermine the rule of law.

Ronald Cass, *Power Failures: Prosecution, Power, and Problems*, Engage, Volume 16, Issue 3 (Oct. 2015) (available at https://fedsoc.org/commentary/publications/power-failures-prosecution-power-and-problems).

It is telling that the Government has spent most of its Response attempting to establish how cases cited in the Defendant's motion for their legal rationale are nevertheless factually dissimilar to the Government's allegations in the present case. This skirts the fundamental contention and basis of Defendant's motion to dismiss: the federal prosecutors in this case have bulldozed over traditional principles of federalism and deference to states in local criminal matters, while disregarding clear *congressional intent* regarding the bifurcated system of regulation of campaign finance maintained at the federal and state levels. The Government's action in this regard is unprecedented in Kansas and lays bare the prosecutorial overreach at the heart of this case.

In other contexts, this "creativity" of federal prosecutors in prosecuting local crimes has not gone unnoticed by federal courts. In *Bond v. United States*, with Chief Justice John Roberts writing for the majority, the United States Supreme Court determined that in a case of a domestic

assault involving a household cleaner deployed against a jilted lover, federal jurisdiction did not exist under the otherwise broadly written federal statutes regarding deployment of chemical weapons. The court held that "the global need to prevent chemical warfare does not require the Federal Government to reach into the kitchen cupboard, or to treat a local assault with a chemical irritant as the deployment of a chemical weapon. There is no reason to suppose that Congress—in implementing the Convention on Chemical Weapons—thought otherwise." *Bond v. U.S.*, 134 S.Ct. 2077, 2093, 189 L.Ed.2d 1 (2014).

As the Government in the present case may be quick to point out, this fact pattern is distinguishable from the Defendant's alleged conduct. However, the Supreme Court's rationale and reaffirmation of principles of federalism regarding the "sensitive relation between federal and state criminal jurisdiction" is directly on point. *Id.* at 2089. The Bond opinion is an example of a model analysis for principles of federalism when applied to federal prosecution of the "unremarkabl[y] local" conduct alleged in the Government's indictment. *See id.* at 2084. In the interest of keeping this reply brief relatively brief, however, the following maxims should be considered by this court in considering the government's prosecution in the present action:

> Because the constitutional structure leaves local criminal activity primarily to the States, the Supreme Court has generally declined to read federal law as intruding on that responsibility, unless Congress has clearly indicated that the law should have such reach. *See id.* at 2083.
>
> The Supreme Court avoids reading statutes to dramatically intrude upon traditional state criminal jurisdiction in the absence of a clear indication that they do. *See id.* at 2088.
>
> It is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides the usual constitutional balance of federal and state powers. *See id.* at 2089.

> If the Federal Government would radically readjust the balance of state and national authority, those charged with the duty of legislating must be reasonably explicit about it. *Id.*
>
> When legislation affects the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision. *Id.*
>
> The Supreme Court will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction. *Id.*
>
> It is appropriate to refer to basic principles of federalism embodied in the Constitution to resolve ambiguity in a federal statute. *Id.* at 2090.
>
> Maintaining the constitutional balance between the National Government and the States is not merely an end unto itself; rather, by denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power. *Id.* at 2091.

To reiterate, the Government in its Response has not addressed the fundamental contention of Defendant's motion: Congress has expressly chosen *not* to regulate state and local campaign finance reporting and use of campaign funds. Congress has intentionally created a bifurcated regulatory system for campaign finance related conduct. Congress also has enacted very broadly worded wire and bank fraud statutes, but when Congress has subjected its own officials to more specific statutes (involving far less severe penalties) regulating federal candidate campaign conduct and reporting, it strains credulity to believe Congress somehow intended to allow prosecution of state and local campaign officials under generic fraud statutes *for the exact same alleged conduct*, albeit in elections for local hamlets across the country.

The Government's Response fails to address the fundamental inequities this prosecutorial bait-and-switch creates. Had the Defendant been running for Congress, he would have been

subject to federal administrative penalties or criminal misdemeanor charges; but, the Defendant instead ran for state senator and later, local county commissioner, which in the minds of federal prosecutors, subjects him to federal felony prosecution under statutes wholly unrelated to campaign finance regulation at the federal and state level. If this is the case, why not prosecute federal candidates under the more broadly written and heavy-handed bank and wire fraud statutes? There is a simple answer to this: congressional intent.

The Government's Response to this line of argument is, "As long as we have a broadly written statute somewhere in the federal code and we're not discriminating against a protected class, we will do what we want." The government's response, however, is simply not true. Federal prosecutors can only enforce what Congress has intended in its duly enacted legislation under its own limited powers. Everything else—especially in the areas of criminal law and regulation of intrastate conduct–is left to the traditional province and police power of the states. See *Bond* at 2086 (citing *U.S. v. Lopez*, 514 U.S. 549, 567, 115 S. Ct. 1624 (1995)); *see also* U.S. Const. amend. X.

What good is congressional deference to principles of federalism, state sovereignty, and traditional spheres of regulation if federal prosecutors will simply bootstrap their own preference for *what the law should be* into broadly written criminal statutes? At what point does this stop? To invert a line from a popular animated movie, "When everything is federal, nothing won't be."[1]

---

[1] *See Incredibles* (Pixar Animation Studios, 2004) (paraphrasing line of movie villain, "When everybody is super, no one will be.").

B. Abstention.

In *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989), the U.S. Supreme Court detailed the history and applicability of the principle of abstention in federal court cases. The Court observed that its "cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *Id.*, 491 U.S. at 358. In making this initial point, the Court quoted suasive language from a previous case: "[The courts of the United States] cannot abdicate their authority or duty in any case in favor of another jurisdiction. (Citation omitted.)" *Id.*

That principle, the Court underscored, "does not eliminate . . . and the categorical assertions based upon it do not call into question, the federal courts' discretion in determining whether to grant certain types of relief—a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted." 491 U.S. at 359. Quoting *Younger v. Harris,* 401 U.S. 37, 45 (1971), the Court observed "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do,'" (Emphasis added.) *Id*.

The Court then applied a principle referred to as the Burford Abstention doctrine, a doctrine "distilled from" previous case law including *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *Id*., at 361.

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal

> review of the question in a case and in similar cases <u>would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern</u>. (Emphasis added.)

*Id.*

The Court ultimately found that the Burford Abstention doctrine was not applicable to the facts of the *New Orleans Pub. Serv., Inc.* case.

> While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a "potential for conflict" with state regulatory law or policy. [citation omitted.] Here, NOPSI's primary claim is that the Council is prohibited by federal law from refusing to provide reimbursement for FERC-allocated wholesale costs. Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication of this sort of pre-emption claim <u>would not disrupt the State's attempt to ensure uniformity in the treatment of an "essentially local problem</u>, (Emphasis added.)

*Id.*, at 362.

Here, however, the Burford Abstention doctrine should properly be applied and dismissal granted. This Court should abstain from interfering with the proceedings of the Kansas Governmental Ethics Commission (the state administrative agency)[2], because federal involvement/preemption will absolutely disrupt Kansas' attempt to ensure uniformity in the treatment of an essentially local problem. Depending on whether the government selects a particular state candidate for federal prosecution or not, a campaign finance violation could result in as a little as a fine (the usual penalty) or in an unusually harsh penalty such as federal prison. There will be no uniformity in the handling of campaign finance violations in Kansas if the

---

[2] Mr. O'Donnell self reported his alleged misconduct to the KGEC.

government continues to intrude in an area that traditionally and statutorily lies with a state agency.

Abstention is central to maintaining our nation's balance of power. It reflects "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37, 44 (1971). Permitting the government to arbitrarily select one candidate among a dozen over the past ten years (who has allegedly committed a campaign finance violation) for federal prosecution not only disrupts our nations balance of power, undermines the state's attempt to ensure uniformity in the treatment of an essentially local problem, but also invites a sweeping expansion of federal criminal jurisdiction.

**WHEREFORE**, respectfully moves the Court to dismiss the present case and for such other and further relief as the Court deems necessary.

Respectfully submitted,

/S Mark T. Schoenhofer, Attorney
Mark T. Schoenhofer, #15781
1631 E. 1st Street
Wichita, Kansas 67214
316-262-5400
Fax: 316-262-1787
Email: mydefensefirst@yahoo.com

*United States of America v. Michael B. O'Donnell, II*, Case No. 18-10043-01-EFM
Reply Brief

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that he electronically filed the foregoing Reply Brief with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

                                    /S Mark T. Schoenhofer, Attorney
                                    Mark T. Schoenhofer, #15781